IN THE MATTER OF: D.D.F.

No. COA07-798

(Filed 4 December 2007)

**1. Termination of Parental Rights— juvenile petition signed by caseworker—no jurisdictional deficit**

The trial court had jurisdiction to enter a termination of parental rights order despite respondent's contention that the juvenile petition was not properly signed. The petition and the

**IN RE D.D.F.**

[187 N.C. App. 388 (2007)]

record before the trial court clearly demonstrated the petitioning caseworker's status and respondent has never raised any question as to the caseworker's authority; the fact that the petition did not explicitly state that the caseworker who signed the petition was an authorized representative of the director of social services does not create a jurisdictional defect.

**2. Termination of Parental Rights— juvenile petition—verified by caseworker—jurisdiction conferred**

A juvenile petition was properly verified and conferred jurisdiction on the trial court where the caseworker signed the verification but did not sign the signature line itself. Respondent did not argue that the caseworker was not an authorized representative of the Director of the county DSS, that she exceeded the scope of her authority, or that respondent was prejudiced in any way.

**3. Termination of Parental Rights— standing to file petition—custody of juvenile**

DSS had custody of a juvenile under an order from a court of competent jurisdiction, so that DSS had standing to file a petition to terminate parental rights under N.C.G.S. § 7B-1104. The petition was signed and verified in accordance with N.C.G.S. § 7B-1104.

**4. Termination of Parental Rights— jurisdiction—signature on petition**

An order awarding custody of a minor child to DSS was an order from a court of competent jurisdiction, despite respondent's contention concerning the signature on the juvenile petition, and DSS had standing to file a petition for termination of parental rights.

Appeal by respondent-father from order entered 1 May 2007 by Judge Regan A. Miller in District Court, Mecklenburg County. Heard in the Court of Appeals 5 November 2007.

*Mecklenburg County Attorney's Office, by Tyrone C. Wade, for petitioner-appellee.*

*Janet K. Ledbetter, for respondent-appellant.*

**IN RE D.D.F.**

[187 N.C. App. 388 (2007)]

STROUD, Judge.

Respondent appeals the 1 May 2007 order entered in District Court, Mecklenburg County by Judge Regan A. Miller terminating his parental rights. Respondent argues: (1) the trial court lacked subject matter jurisdiction over the case due to petitioner failing to state specifically in the petition that she was signing as DSS director or an authorized representative thereof, and (2) petitioner lacked standing to file the petition to terminate respondent's parental rights, also due to the improperly signed juvenile petition. We disagree and affirm the 1 May 2007 order of the trial court.

## I. Background

On 22 August 2000, petitioner Maureen Geier ("Geier"), a Mecklenburg County Department of Social Services ("DSS") case-worker, filed a juvenile petition pursuant to N.C. Gen. Stat. § 7B-403 alleging that D.D.F. was a dependent juvenile as defined by N.C. Gen. Stat. § 7B-101(9). The petition stated, "Maureen Geier, Petitioner, ha[s] sufficient knowledge or information to believe that a case has arisen which invokes the juvenile jurisdiction of the Court." The record indicates that Geier was a social worker assigned to D.D.F.'s case. The petition's signature line was left blank, but the address line was filled in as "Youth and Family Services." Also, directly under the signature and address line was the verification section of the petition.

The verification section provides that "[t]he undersigned Petitioner, being duly sworn, says that the Petition hereon is true to his own knowledge, except as to those matters alleged on information and belief, and as to those matters, he believes it to be true." This verification was signed by Geier as "petitioner-affiant" and properly notarized. In addition, as required by N.C. Gen. Stat. § 7B-402(b), an "Affidavit as to of Status of Minor Child" ("affidavit") was also verified by Geier and was attached to the petition. The affidavit stated, "Maureen J. Geier, Mecklenburg County Department of Social Services, Youth and Family Services, 720 East Fourth Street, Charlotte, N.C. 28202 . . . is the [p]etitioner in this action."

The first adjudicatory hearing was held on 13 September 2000. Counsel was present for both parents. Although respondent-father ("respondent") was served on 25 August 2000, he was not present. Geier was present and was identified by the adjudicatory hearing order entered on 14 September 2000 as the "social worker" for the case. The 14 September 2000 order granted custody of D.D.F. to Mecklenburg County Youth and Family Services.

IN RE D.D.F.

[187 N.C. App. 388 (2007)]

Respondent began supervised visitation with D.D.F. in January 2001. By the 9 March 2001 review hearing, respondent's paternity of D.D.F. had been confirmed by paternity testing, although he did not attend this review hearing. As of the 25 September 2001 review hearing, respondent's visitation had been terminated due to missing several visits and failing to contact DSS to cancel. As of 20 September 2001, respondent was incarcerated on charges of robbery with a dangerous weapon, two kidnapping charges, and larceny with a car. He was convicted of robbery with a dangerous weapon in May 2002 and sentenced to an eight year term. Although both parents were represented by counsel at all times since the inception of the case in 2000, neither respondent nor the child's mother ever filed any response to the petition or any motion to strike or to dismiss the petition.

On 8 November 2006, DSS filed a petition to terminate respondent's parental rights. The petition was signed by Kathleen A. Widelski, attorney for petitioner DSS, and was verified by Leslie Buras, a DSS Youth and Family Services division social worker assigned to the case of D.D.F. In an order entered 1 May 2007, following a termination hearing at which respondent was represented by counsel, the district court terminated respondent's parental rights on four grounds: (1) neglecting the child, (2) willfully leaving the minor child in foster care for more than twelve months without making reasonable progress to correct the conditions that led to the child's removal from the home, (3) willfully failing to pay a reasonable cost of the minor child's care while in custody of Youth and Family Services, and (4) willfully abandoning the minor child for at least six months immediately preceding the filing of the petition to terminate parental rights. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(7) (2005). Respondent appeals.

On appeal respondent argues only two issues: (1) whether the trial court lacked subject matter jurisdiction over the case due to petitioner's failure to state explicitly in the petition that she was signing as DSS director or an "authorized representative" thereof, and (2) whether petitioner had standing to file the petition to terminate respondent's parental rights. We affirm the trial court's order terminating respondent's parental rights.

## II. Subject Matter Jurisdiction

[1] Respondent first argues that the trial court lacked subject matter jurisdiction to enter the termination order because the 22 August 2000 juvenile petition was not signed by the director of DSS or an

"authorized representative" of DSS. *See* N.C. Gen. Stat. §§ 7B-101(10), -403(a) (2005). Respondent acknowledges that the petition was verified by Geier and that she was a Mecklenburg County social worker who was assigned to D.D.F.'s case. However, respondent contends that the petition was not signed or verified by the director of DSS or an "authorized representative," because the petition does not state that Geier is an "authorized representative" of the DSS director.

[W]hether a trial court has subject matter jurisdiction is a question of law, which is reviewable on appeal *de novo.*" *Ales v. T.A. Loving Co.,* 163 N.C. App. 350, 352, 593 S.E.2d 453, 455 (2004).

A court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking.

The provisions of our Juvenile Code establish one continuous juvenile case with several interrelated stages. A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition. [V]erification of the petition in an abuse, neglect, or dependency action as required by N.C.G.S. § 7B-403 is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other. [I]n the absence of a verification [. . .] a trial court's order is void *ab initio.*

A petition to terminate parental rights may only be filed by a person or agency given standing by section 7B-1103(a) of our General Statutes. One such agency is any county department of social services [. . .] to whom custody of the juvenile has been given by a court of competent jurisdiction. Standing is jurisdictional in nature and consequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of the case are judicially resolved.

*In re S.E.P. & L.U.E.,* 184 N.C. App. 381, 487, 646 S.E.2d 617, 621 (2007) (internal citations and internal quotations omitted).

A. "Authorized representative" of the Director

Juvenile petitions must be "drawn by the director [of DSS], verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing." N.C. Gen. Stat. § 7B-403(a). N.C. Gen. Stat. § 7B-101(10) provides that the word "director" as used in

**IN RE D.D.F.**

[187 N.C. App. 388 (2007)]

N.C. Gen. Stat. § 7B-403 includes "the director's representative as authorized in G.S. 108A-14." N.C. Gen. Stat. § 7B-101(10). N.C. Gen. Stat. § 108A-14(11) gives the "director" the duty and responsibility "[t]o assess reports of child abuse and neglect and to take appropriate action to protect such children pursuant to the Child Abuse Reporting Law, Article 3 of Chapter 7B of the General Statutes." N.C. Gen. Stat. § 108A-14(a)(11) (2005). N.C. Gen. Stat. § 108A-14(b) provides that "[t]he director may delegate to one or more members of his staff the authority to act as his representative. The director may limit the delegated authority of his representative to specific tasks or areas of expertise." N.C. Gen. Stat. § 108A-14(b) (2005). In light of the role of social services caseworkers as specifically designated by statute, where the record demonstrates that a DSS caseworker is assigned to the child's case and there is no indication whatsoever that the caseworker was not an "authorized representative" of the director or that she was acting outside of her authority, the DSS caseworker is an "authorized representative" of the director for purposes of filing a petition under N.C. Gen. Stat. § 7B-403. *See* N.C. Gen. Stat. §§ 7B-101(10), -403(a), 108A-14(a)(11), (b).

The record demonstrates that Geier is the DSS caseworker who was assigned to D.D.F.'s case at its inception, and as such, she was charged with the duty and responsibility under N.C. Gen. Stat. § 108A-14(a)(11) to investigate the allegations of neglect of D.D.F. and "to take appropriate action to protect such [child] pursuant to the Child Abuse Reporting Law, Article 3 of Chapter 7B." N.C. Gen. Stat. § 108A-14(a)(11). Such "action" would properly include the filing of a petition for adjudication if needed to protect the child. *Id.* The petition and record before the trial court clearly demonstrate the petitioning caseworker's status and respondent has never raised any question as to the caseworker's authority to file a petition for adjudication. Therefore, based upon the statutory duties assigned to the DSS director, which are executed by the caseworkers, Geier was an "authorized representative" of the director who could verify a petition pursuant to N.C. Gen. Stat. § 7B-403. The fact that the petition did not explicitly state that she was an "authorized representative" of the director does not create a jurisdictional defect. *See* N.C. Gen. Stat. §§ 7B-101(10), -403(a), -108A-14(a)(11).

This Court held in *In Re Dj.L., D.L. & S.L.* that a juvenile petition that was signed and verified by the social worker as the "petitioner" and listed the social worker's address as "Youth and Family Services," contained sufficient information from which the trial court could

determine that the social worker had standing to initiate the action under N.C. Gen. Stat. § 7B-403. In Re *Dj.L.*, *D.L. & S.L.* 184 N.C. App. 76, 79, 646 S.E.2d 134, 137 (2007). Both *In Re Dj.L.*, *D.L. & S.L.* and the present case originated in Mecklenburg County and both used exactly the same juvenile petition form. *See In re Dj.L.*, *D.L. & S.L.*, 184 N.C. App. 76, 646 S.E.2d 134. The only potentially significant difference between the petitions is that there was a signature by the social worker, Betty Hooper, on the petition as well as the verification in *In re Dj.L.*, *D.L. & S.L.*, whereas Geier's signature is missing from the petition herein. *Id.* We held in *In re Dj.L.*, *D.L. & S.L.*, that the juvenile petition

> contained sufficient information from which the trial court could determine that [the DSS social worker] had standing to initiate an action under section 7B-403(a). In so holding, we construe[d] the juvenile petition "as to do substantial justice." N.C. Gen. Stat. § 1A-1, Rule 8 (2005) ("All pleadings shall be so construed as to do substantial justice.").

*Id.* at 80, 646 S.E.2d at 137. We also emphasized in *In re Dj.L.*, *D.L. & S.L.*, and we do here as well, that "respondent has never argued, and does not now argue" that the DSS social worker who signed the verification was "not an authorized representative of the Director of the Mecklenburg County Department of Social Services or that she exceeded the scope of her authority by filing the juvenile petition, *id.* at 80, 646 S.E.2d at 137, but rather respondent argues only that the petition does not explicitly state that Geier is an "authorized representative" of the DSS director.

This case can be distinguished from *In re Dj.L.*, *D.L. & S.L.* only by the fact that in the present case petitioner failed to sign on the petition's signature line and signed only the "petitioner-affiant" signature line about three inches below the petition's signature line, in the verification portion of the petition. *See id.*, 184 N.C. App. 82, 646 S.E.2d 134. However, respondent's argument was not focused on the blank line, but, just as in *In re Dj.L.*, *D.L. & S.L.* respondent argued that the petition failed because it was not signed and verified by the director of DSS or an "authorized representative." *See id.* at 82, 646 S.E.2d at 137. The issue as to Geier's authority to verify the petition is controlled by *In Re Dj.L.*, *D.L. & S.L. See id.* 184 N.C. App. 76, 646 S.E.2d 134. We deem the petition sufficient in light of our decision in *In re Dj.L.*, *D.L. & S.L.*, and thus Geier "had standing to initiate an action under section 7B-403(a)." *See id.* at 82, 646 S.E.2d at 137. Again we stress that "the best practice is to include a distinct statement that the

**IN RE D.D.F.**

[187 N.C. App. 388 (2007)]

petitioner is the director of the county department of social services or is an authorized representative of the director." *Id.* at 82, 646 S.E.2d at 137.

B.  Failure to Sign Juvenile Petition

**[2]** In the present case, we have an additional issue which did not arise in *In re Dj.L., D.L. & S.L.*, as Geier did not sign the signature line on the petition itself, although she did sign the verification. *See id.*, 184 N.C. App. 76, 646 S.E.2d 134. We must therefore consider whether the petitioner's signature on the petition's signature line is an additional jurisdictional requirement under N.C. Gen. Stat. § 7B-403 where the petition is properly verified. *See* N.C. Gen. Stat. § 7B-403. N.C. Gen. Stat. § 7B-403(a) requires that the juvenile petition be "drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk." *Id.* N.C. Gen. Stat. § 7B-403(a) does not specifically provide that the petition must be signed in addition to the signature on the verification. *Id.*

We can find no case addressing what it means for the petition under N.C. Gen. Stat. § 7B-403(a) to be "drawn by the director," although the cases citing this statute seem to be using the terms "drawn by" as synonymous with "signed by" the director. *See, e.g., In re T.R.P.*, 360 N.C. 588, 636 S.E.2d 787 (2006). North Carolina's reported cases which address the issue of the trial court's jurisdiction where a petition has an alleged deficiency in its signing and verification under N.C. Gen. Stat. § 7B-403(a) have dealt with petitions which were not verified or which were neither signed nor verified. The common element in all of the cases is the absence of a proper *verification*, which our Supreme Court held to be a jurisdictional requirement in *In re T.R.P. See, e.g., id.*, 360 N.C. 588, 636 S.E.2d 787. The holding in *In re T.R.P.* was specifically that "the district court could not exercise subject matter jurisdiction here in the absence of the *verification*" of the petition, where the petition was "*neither signed nor verified* by the Director of WCDSS or any authorized representative thereof." *Id.* at 589, 636 S.E.2d at 789 (emphasis added).[1]

---

1. N.C. Gen. Stat. § 1A-1, Rule 11(a) deals with the "signing" of pleadings and provides that

> [e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified . . . ."

N.C. Gen. Stat. § 1A-1, Rule 11(a) (2005).

IN RE D.D.F.

[187 N.C. App. 388 (2007)]

Respondent has not argued that Geier is not an authorized representative of the Director of the Mecklenburg County DSS, that she exceeded the scope of her authority by filing the juvenile petition, or that the lack of her signature on a line approximately three inches above the line upon which she did sign for purposes of the verification has prejudiced respondent in any way. We hold that pursuant to *In re T.R.P.*, the petition was properly verified and it does confer jurisdiction on the trial court. See *id.*, 360 N.C. 588, 636 S.E.2d 787.

We also note that the state of North Carolina's standard form entitled "Juvenile Petition (Abuse/Neglect/Dependency)," form AOC-J-130 (New 7/99) does not have a separate line for the petitioner's signature but rather has a blank for the petitioner to sign once, only within the verification portion of the form. We will not now make the failure to sign the petition on a separate signature line which was added by petitioner herein a jurisdictional requirement, where the verification is properly signed. See, e.g., *State v. Sanford Video & News, Inc.*, 146 N.C. App. 554, 560-61, 553 S.E.2d 217, 221 (2001), *disc. rev. denied*, 355 N.C. 221, 560 S.E.2d 359 (2002) (holding that where form AOC-CR-305 provided two blanks for "the judge's signature, one directly underneath the judgment, and the other located at the bottom of the form below the section giving notice of appeal" and the "judge signed the second signature area at the bottom of the form, this was sufficient to constitute signing the judgment and that defendant was not prejudiced thereby").

Despite our holding, we do not condone petitioner's failure to sign on the signature line for petitioner upon its own form and suggest that consistent and careful use of the AOC's standard juvenile forms may help avoid problems with the execution of petitions in the future. We recognize the contributions of the DSS employees who

---

Rule 11(a) also provides for the consequences of the failure of a party to "sign" a pleading: "If a pleading, motion, or other paper is not *signed*, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant." *Id.* (emphasis added). Rule 11(a) contemplates the omission of a signature as a simple oversight, which can be easily corrected when pointed out, and then the case may proceed on its course, dealing with the substantive issues raised by the pleadings. Only if the pleading is not signed "promptly" even after omission is pointed out does Rule 11(a) provide for the pleading to be stricken. See *id.* The juvenile code would not prevent this type of minor amendment to a petition, as N.C. Gen. Stat. § 7B-800 provides that "[t]he court may permit a petition to be amended when the amendment does not change the nature of the conditions upon which the petition is based." N.C. Gen. Stat. § 7B-800 (2005). We cannot imagine how the addition of the petitioner's signature in compliance with N.C. Gen. Stat. § 1A-1, Rule 11(a) would "change the nature of the conditions upon which the petition is based." See N.C. Gen. Stat. §§ 1A-1, Rule 11(a), 7B-800.

work on these difficult cases, some of which, just as this case, last for many years. However, we reiterate our suggestion as stated in *In re S.E.P. & L.U.E.*, with a slight modification: "We take this opportunity to suggest that properly [signing and] verifying a petition is likely to be the easiest part of DSS's job." *In re S.E.P. & L.U.E.* at 488, 646 S.E.2d at 622. Likewise, we appreciate the work of the trial judges, but we also suggest that checking the petition to make sure that it is both signed, if the petition has a separate signature line, and verified before proceeding with an adjudication hearing is likely to be the easiest part of the trial court's job. This assignment of error is overruled.

C. Petition to Terminate Parental Rights

**[3]** Respondent also contends the petition to terminate parental rights is deficient because it was not verified by a person who is specifically identified as an "authorized representative of the Director of MCDSS". Respondent concedes that the petition to terminate parental rights was signed by the attorney for DSS, who "may be considered an authorized representative of MCDSS," but argues that the case *sub judice* is "directly on point" with *In Re S.E.P. & L.U.E.*, in which we held that the trial court lacked subject matter jurisdiction for the adjudication order and we therefore also vacated the orders terminating parental rights. *See In Re S.E.P. & L.U.E.*, 184 N.C. App. 481, 646 S.E.2d 617.

However, we have already held above that the original adjudication petition did confer jurisdiction upon the trial court. In *In Re S.E.P. & L.U.E.*, we held that the trial court did not have jurisdiction because the petitions were not properly verified. *Id.* This case is therefore not "directly on point" with *In Re S.E.P. & L.U.E. See id.*

Petitions to terminate parental rights are governed by N.C. Gen. Stat. § 7B-1104, which states that the "petitioner or movant" shall verify the petition. N.C. Gen. Stat. § 7B-1104 (2005). N.C. Gen. Stat. § 7B-1103 provides that "[a]ny county department of social services . . . to whom custody of the juvenile has been given by a court of competent jurisdiction" may file a petition to terminate parental rights. N.C. Gen. Stat. § 7B-1103(a)(3) (2005). Unlike N.C. Gen. Stat. § 7B-403(a), sections 7B-1103 and 7B-1104 do not require a termination petition to be signed or verified by the director of DSS or an "authorized representative." *See* N.C. Gen. Stat. §§ 7B-403(a); -1103, -1104.

We held above that DSS had custody of the juvenile under an order from a court of competent jurisdiction, so that the "county

department of social services" had standing to file a petition under N.C. Gen. Stat. § 7B-1104. *See* N.C. Gen. Stat. § 7B-1103, -1104. The petition to terminate respondent's parental rights filed on 8 November 2006 was signed and verified, in accordance with N.C. Gen. Stat. § 7B-1104. *See id.* Therefore, this assignment of error is overruled.

## III. Standing

[4] In respondent's second assignment of error, he contends the petitioner did not have standing to file a petition to terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1103(a)(3) because the trial court did not have jurisdiction to grant DSS custody since the juvenile petition was invalid. In other words, defendant argues that because the juvenile petition did not expressly state it was signed by the DSS director or an "authorized representative" thereof, the court did not have jurisdiction to enter the custody order and D.D.F. was thus not placed into DSS's custody "by a court of competent jurisdiction." *See* N.C. Gen. Stat. §§ 7B-1103(a)(3), -1104.

We have already determined above that the 2000 juvenile petition was sufficient to invoke the subject matter jurisdiction of the trial court. Therefore, the order dated 14 September 2000 awarding custody of the minor child to DSS was an order from a "court of competent jurisdiction." *See id.* Pursuant to N.C. Gen. Stat. § 7B-1103(a)(3), DSS is a "county department of social services . . . to whom custody of the juvenile has been given by a court of competent jurisdiction," and therefore DSS had standing to file a petition for termination of respondent's parental rights. *See* N.C. Gen. Stat. § 7B-1103(a)(3). This assignment of error is overruled.

## IV. Conclusion

Respondent has not argued his remaining assignments of error and they are therefore deemed abandoned. N.C.R. App. P. 28(b)(6). For the foregoing reasons, the order of the trial court terminating respondent's parental rights is affirmed.

AFFIRMED.

Judges WYNN and ELMORE concur.